CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

JAN 2 9 2009
JOHN F CORCORAN, CLERK
BY:
DEPUTY CLERK

| | | |
|---|---|---|
| DONALD SIMMONS, | ) | Case No. 5:08cv00032 |
| | ) | |
| *Plaintiff* | ) | REPORT AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | By:  Hon. James G. Welsh |
| Commissioner of Social Security, | ) | U. S. Magistrate Judge |
| | ) | |
| *Defendant* | ) | |

The plaintiff, Donald Simmons, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency') denying his claims for a period of disability insurance benefits ("DIB") and for Supplemental Security Income under Titles II and XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq.*, respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The Commissioner's Answer was filed on July 29, 2008 along with a certified copy of the administrative record ("R.") on August 11, 2008, containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered July 30, 2008, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Alleging multiple assignments of error, the plaintiff seeks reversal of the adverse administrative decision "or other proper relief." His basic contentions are that the ALJ erred at step-

three in the agency's standard decisional process [1] by failing to find that he had mood [2] and psychotic disorders were of listing-level severity and that the ALJ separately erred at the next decisional step by concluding that he retained the functional ability to perform jobs he had performed in the past, including work as a housekeeper, an order selector and a materials handler. Alternatively, the plaintiff argues that his case merits a remand and reopening on three alternative bases. First, he contends that the ALJ failed to meet his "affirmative obligation" *sua sponte* to develop the record further by seeking additional treating source medical evidence or explanation. Second, he argues that the ALJ erred by failing to obtain the testimony of a medical advisor. And third, he asserts that the case merits a remand because of the "new and material" evidence he submitted to the Appeals Council. In his brief, the Commissioner contends the ALJ "meticulously discharged his duty" to weigh the evidence and to assess the treating source medical opinions upon which the plaintiff relies. Each party has moved for summary judgment; the views of counsel have been received and considered, and the case is now before the undersigned for a report and recommended disposition.

---

[1] To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §.404.1503(a); *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981)

[2] The plaintiff argues that a mental residual functional capacity questionnaire (R.212-216 and 217-221) completed by a treating source supports his contention that he "meets the mood disorder criteria" for Listing 12.04; however, this exhibit records only a psychotic condition as the Axis I diagnosis.

2

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying benefits.

## I.     Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement either to a period of DIB or to SSI. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (*quoting Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3d at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

3

## II.    Administrative History

The record shows that plaintiff protectively filed his applications on September 16, 2005, alleging a disability [3] due to a bipolar condition and the associated medications which caused him to "sleep a lot." (R.22,72,69-71,89,124,127,139,222-224.) His claim was denied, both initially and on reconsideration, and an administrative hearing on his application was held on February 1, 2007 before an ALJ. (R.22,28-33,40-55,68,243-281.)   The plaintiff was present, testified, and was represented by counsel. (R.22,34,243,249-272.) Robert Jackson, a vocational witness, was also present and testified. (R.62-67,243,273-280.)

Utilizing the agency's standard sequential evaluation process, the plaintiff's claims were denied by written administrative decision dated February 23, 2007. (R.22-28.)   *Inter alia*, the ALJ concluded that the plaintiff's affective disorder was his only "severe" impairment [4]  within the meaning of the Act, that it was of insufficient severity to meet or equal the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, [5]  and that the plaintiff retained a

---

[3] In the plaintiff's Tittle II claim a disability onset date of January 31, 2004 is alleged (R.69), and in his Title XVI claim a disability onset date of June 7, 2001 is alleged. (R.222)

[4] Quoting *Brady v. Heckler*, 724 F.2$^d$ 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. §§ 404.1520(c) and 416.920(c).

[5] The "listings" are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they effect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For an individual to show that his or her impairment matches a listing, it must meet all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521,529 (1990).  An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Id.* (citing Social Security Ruling ("SSR") 83-19.)  The listings are designed so that the requirements for meeting one of them is, in effect, a higher

4

residual functional capacity to perform certain past relevant work. (R.24-28.)

After issuance of the ALJ's adverse decision, the plaintiff made a timely request for Appeals Council review. (R.18-19,231-242.) His request was denied (R.5-9), and the decision of the ALJ now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

## III.    Facts and Analysis

The record in this case shows that the plaintiff was born in 1965 and was forty-four years of age [6] at the time of the administrative hearing. (R.69,222,275.) He has a high school education. (R.250,275.) His past relevant work included jobs as an order selector, a materials handler, and a housekeeper (R.275-276), and based on the vocational testimony, each of these jobs could be successfully performed by and individual with the plaintiff's vocational profile and functionally restricted to work of a routine, non-stressful nature that did not require contact with the general public or working in close proximity with others. (R.25-27,277-278.)

As the ALJ observed in his written decision, "[the] medical records in this case are sparse." (R.27.) Essentially, they show that the plaintiff first went to the Rockingham Community Services Board ("RCSB") in July 2005 complaining of having episodes of anger and agitation ; at the time,

___

standard than the functional assessment at the agency's final decisional step, because the listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* at 532.

[6] At this age the plaintiff is classified as a "*younger person*," and pursuant to the agency's regulations age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.920(c).

5

however, he was found to be "polite and cooperative," as well as "soft spoken." (R.196-197.) At the time of a follow-up psychiatric evaluation by Dr. Nicholas McClean-Rice in August, the plaintiff reported having had psychotic symptoms in the past; Dr. McClean-Rice noted, however, that the plaintiff demonstrated no thought disorder or evidence of any current paranoia and was "polite and cooperative." (R.194-195.) Similarly, when the plaintiff saw Dr. Lou Bartram in October, he exhibited no behavioral abnormality, although he reported episodes of racing thoughts, low energy, poor sleep, and a recent hallucination incident. (R.190-191.) At that time Dr. Bartram discontinued Prozac and prescribed a slightly increased dosage of Resperdal. (*Id.*) When he was next seen by Dr. Bartram in April 2006, the plaintiff was found to be continuing to improve and to have his anger under better control. (R.173.)

Consistent with these findings, the RCSB psychotherapy and other contact notes covering the period between July 2005 and May 2006 document the plaintiff's improved outlook with medication and his exhibition of generally normal behaviors and cooperativeness. (R.171-201.) For example, on each occasion that the plaintiff was seen by Bernie Karr, this counselor at RCSB reported the plaintiff to be cooperative and to exhibit an appropriate affect. (R.172,180,192,196.) And by March 2006 Mr. Karr found the plaintiff to be "doing very well. (R.178.)

At the time the plaintiff was seen for a consultive medical examination in February 2006, he told Dr. Korin Hudson, the examining physician, that he had been recently diagnosed as having a "bipolar affective disorder;" however, this assertion was neither documented in the RCSB records nor did the plaintiff exhibit any such behavior during Dr. Hudson's examination. (R163-170.)

6

In January and again in May 2006, the administrative record was reviewed by state agency psychologists. (R.147-162.) In each instance, it was concluded that the plaintiff exhibited some signs and symptoms associated with psychotic, mood and personality disorders; however, they did not exactly fit the criteria of Listing 12.03, 12.04 or 12.08. (*Id.*) Likewise, it was concluded that the record documented neither the frequency nor the durational criterial of any one or more of these Listings. (R.147,149-150,154,157-158.) 20 C.F.R. Part 404, Subpart P, Appendix 1. In addition, these reviewing psychologists each assessed the plaintiff to retain the functional ability to engage in routine, non-stressful work activity. (R.160-162.)

## A.

In apposition to these various professional findings and conclusions, at the administrative hearing in February 2007, the plaintiff submitted a functional capacity assessment form dated December 6, 2006 which had been ostensively [7] prepared by Dr. Inez White [8] in which she identifies twenty-eight symptoms to support her psychotic disorder diagnosis and in which significant work-related functional limitations are also reported. (R.25,212-216,.217-221) However, in large measure the record contains no relevant evaluation or treatment notes supporting this extensive list of signs and symptoms (R.213), and it is directly contradicted by the plaintiff's testimony that his hallucinations had stopped with the use of prescribed medication. (R.262)

---

[7] As the ALJ noted in his decision, the work-related limitations part of the form "was completed by someone with different handwriting than Dr. White and subsequently revised by adding a limitation which would preclude all work, *i.e.* being absent from the workplace due to illness more than four days a month." (R.25.)

[8] On this form the name of Dr. Bartram as the preparer is stricken-through, and Dr. White's name inserted.

7

The assessment form completed by Dr. White indicates that she had seen the plaintiff "monthly and bi-monthly." As a "treating source," [9] her medical opinions concerning the nature and severity of the plaintiff's condition are, therefore, entitled to "controlling weight," provided they are "well-supported" by "medically acceptable" diagnostic techniques. 20 C.F.R. § 404.1527(d)(2) and § 416.927(d)(2); *Craig v. Chater*, 76 F.3$^d$ 585, 590 (4th Cir. 1995); *see also* Social Security Ruling ("SSR") 96-2p.

By contrast, where the treating physician's opinion is not well-supported by clinical evidence or is to some degree inconsistent with other substantial evidence, the ALJ is entitled to exercise his discretion to give less weight to the opinion. *See Mastro v. Apfel*, 270 F.3$^d$ 171, 178 (4th Cir. 2001). And "by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig, v. Chater*, 76 F.3$^d$ at 590.

In his decision, the ALJ noted that the plaintiff's medical records had been collected and reviewed by state agency consultants. He mentioned the fact that these psychologists had determined that the plaintiff's condition neither met nor medically equaled an impairment listed in Appendix 1, and he determined that the records submitted since then "did not warrant a different conclusion at the third step in the evaluation process." (R.24.) In making his decision to adopt the state agency mental assessment, the ALJ found as a fact that it was "consistent with other credible evidence," and he made the specific finding that, absent any treatment notes from Dr. White, a factual basis for her

---

[9] *See* 20 C.F.R. § 404.1502 and § 416.902.

8

contrary assessment was "completely lacking." (R.25.)

Properly, the ALJ gave no decisional weight to Dr. White's conclusory opinion that the plaintiff is unable to work (R.25). The issue of disability is reserved to the Commissioner, and the ALJ is not bound by a treating physician's opinion on the ultimate issue in the case. 20 C.F.R. § 404.1527(e)(1) and § 416.927(e)(1).

In assessing the plaintiff's residual functional capacity, the ALJ similarly considered the limitations outlined by Dr. White which, as the ALJ observed, "would effectively preclude all work." (*Id.*) Despite finding that the limitations reported by Dr. White were "simply not supported in the record," the ALJ nevertheless gave the plaintiff "the benefit of the doubt" by including a restriction against working in close proximity with others. (*Id.*) As the ALJ noted, however, the plaintiff's mental health treatment was conservative and routine, and the serious functional limitations reported by Dr. White "[could] not be reconciled with his essentially normal mental status on repeated examination." (R.27.)

On the basis of his consideration of the entire record in this case, including the types of evidence and factors listed in 20 C.F.R. § 404.1529(c) and § 416.929(c), the ALJ also concluded that the plaintiff's statements concerning the intensity, persistence and limiting effects of his condition were "not entirely credible." (R.25-26.)

As the plaintiff acknowledged in his brief, four types of evidence are to be given

9

consideration by the ALJ in making his determination whether an individual is, or is not, disabled within the meaning of the Social Security Act. These include: (1) the objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) any subjective evidence of physical manifestations of impairments, as described through a plaintiff's testimonial evidence; and (4) the plaintiff's education, vocational history, residual skills, and age. *E.g., Vitek v. Finch*, 438 F.2d 1157, 1159-60 (4th Cir. 1971); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962).

In the instant case, the ALJ considered the objective medical facts and clinical findings and resolved the various conflicts. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). He gave each treating physician's opinion the weight he deemed it deserved and explicitly explained his rationale for doing so. *See* 20 C.F.R. § 404.1527(d)(1)-(4) and § 416.927(d)(1)-(4). He gave the plaintiff's testimony concerning the subjective effects of his mental condition the wight he deemed it deserved and explained his rationale for doing so. *See* 20 C.F.R. § 404.1529 and § 416.929. And his decision properly took into account the plaintiff's vocational profile in determining the plaintiff's residual functional capacity. *See* 20 C.F.R. § 404.1560 and § 416.960.

**B.**

The plaintiff's argument that the ALJ erred in failing *sua sponte* to seek clarifying additional information from Dr. White is equally without merit. The fact that the ALJ gave little weight to the opinions of Dr. White does not create a duty to seek additional information in an attempt to find her opinions to be credible. This argument by the plaintiff is based upon the Second Circuit decision

10

in *Perez v. Chater*, 77 F.3$^d$ 41, 47 (2$^d$ Cir. 1996), which is not binding on this court. More importantly it is illogical, given the agency's requirement in 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3) that the weight to be given a treating source opinion depends on the extent to which it is well-supported by clinical and laboratory findings in the record.

Even if it is assumed for the purpose of argument that the ALJ had some obligation to contact Dr. White before rejecting her opinions, the plaintiff has failed to make any showing of prejudice. *See Newton v. Apfel*, 209 F.3$^d$ 448, 458 (5th Cir. 2000) (holding that a plaintiff must demonstrate that additional evidence would have been produced by such a follow-up contact with a treating source and that it would have led to a different decision); *Ripley v. Chater,* 67 F.3$^d$ 552, 557 n.22 (5th Cir. 1995). Therefore, any assumed error by the ALJ in failing to fulfill any such assumed duty was at most harmless. *See Camp v. Massanari,* 22 Fed. Appx. 311, 311 (4th Cir. 2001) (unpublished).

## C.

Citing no authority, the plaintiff next argues that the ALJ was affirmatively obligated in this case to obtain the testimony of a medical advisor "to assist with the complicated medical issue" of listing equivalency. Although an ALJ has "a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record," he is not obligated to obtain additional information when the record is adequate to make a determination regarding a disability claim. *France v. Apfel,* 87 F. Supp.2$^d$ 484, 489-490 (DMd, 2000); *see Cook v. Heckler,* 783 F.2$^d$ 1168, 1173, (4th Cir. 1985); *Walker v. Harris,* 642 F.2$^d$ 712, 714 (4th Cir. 1981); 20 C.F.R. § 404.1512 (e) and § 416.912(e).

11

Despite the plaintiff's assertions to the contrary, the medical record fails to suggest any complex medical problem which was not readily understandable by the ALJ. *See Richardson v. Perales*, 402 U.S. 389, 408 (1972) (noting that the use of medical advisors is "primarily in complex cases for explanation of medical problems in terms understandable" to the ALJ). Likewise, there was no suggestion in this case that the testimony of a medical advisor would assist in resolving an ambiguous onset date or clarify the significance of certain clinical or laboratory findings. *See Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995); *Hearings, Appeals and Litigation Law Manual* ("HALLEX") I-2-534. Similarly, in this case there was sufficient evidence in the record to document any progression of the plaintiff's condition during the relevant time period. *See Bailey v. Chater*, 68 F.3d at 79.

Moreover, the language of the applicable agency regulations concerning an ALJ's use of medical advisors is permissive, not mandatory. "[ALJs] may . . . ask for and consider opinions from medical experts on the nature and severity of [an individual's] impairment(s) and whether . . . [the] impairment(s) equals the requirements of any [listed] impairment . . . ." 20 C.F.R. § 404.1527(f)(2)(iii) and § 416.927(f)(2)(iii). The decision to call a medical advisor at the administrative hearing is, therefore, a matter left to the sound discretion of the ALJ. *See* 20 C.F.R. § 404.1527(f)(2)(iii) and § 416.927(f)(2)(iii); 20 C.F.R. § 404.1529(b) and § 416.929(b); *see also Siedlecki v. Apfel*, 46 F. Supp.2d 729, 732 (N.D. Ohio 1999). As the district judge in *Siedlecki* observed, the agency's regulations give the ALJ discretion whether to call on a medical advisor, and it is the ALJ's responsibility to review the evidence and resolve any conflicts in the medical evidence. *Siedlecki v. Apfel*, 46 F. Supp.2d at 732.

12

**D.**

Lastly, the plaintiff argues that this case merits a remand to the agency on the basis of an unsigned Harrisonburg-Rockingham Community Services Board letter (R.230) dated October 10, 2007 which was submitted to the Appeals Council. In contrast, the Commissioner argues that this letter presented the Appeal Council with neither *new* nor *material* evidence meriting a remand for additional administrative consideration.

In *Wilkins v. Secretary*, 953 F.2ᵈ 93 (4ᵗʰ Cir. 1991), the Fourth Circuit determined that the Appeals Council must consider evidence submitted to it "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision. *Wilkins*, 953 F.2ᵈ at 96 (quoting *Williams v. Sullivan*, 905 F.2ᵈ 214, 216 (4ᵗʰ Cir. 1990)). *Wilkins* further defines evidence to be *new* "if it is not duplicative or cumulative" and evidence to be *material* "if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* at 96.

Although this post-decision submission bears the typewritten names of both Bernie Karr, LPC, and Cynthia Sherwood, M.D., a fair reading indicates that it primarily represents the opinions of Mr. Karr concerning the nature and extent of the plaintiff's symptomology, the plaintiff's lack of insight and his difficulties with inter-personal relationships, including those with Dr. McClean-Rice. (R.230.) To some extent, however, this after-decision submission may arguably also represent an after-decision treating source assessment by Dr. Sherwood.

Under either reading, a remand in this case is not warranted. To the extent that the letter

13

represents a treating source assessment by Dr. Sherwood covering the period since she had "recently" replaced Dr. White, the Appeals Council specifically considered the October 10, 2007 letter and found that it was not material because it "did not affect the decision about whether [the plaintiff was] disabled . . . on or before February 23, 2007," the date of the ALJ's decision. (R.6.) *See e.g., Troutman-Hensley v. Astrue*, 2008 U.S.Dist. LEXIS 72683, *5-6 (WDVa, 2008); *Rhodes v. Barnhart*, 2005 U.S.Dist. LEXIS 42876, *33-34 (WDNC, 2005), aff'd 176 Fed. Appx. 419 (4th Cir. 2006).

To the extent that the letter represents the opinions of Mr. Karr it was neither new nor material. It provides both context and an explanation for Dr. McClean-Rice's doubts both about the plaintiff's credibility and about the degree to which the plaintiff suffered from a mental illness; however, in the main it simply reinforces the plaintiff previous contentions. As such it is not new evidence, and it does not provide a cognizable basis for changing the ALJ's decision. *See Poe v. Weinberger*, 403 F.Supp. 312, 316 (NDWVa, 1975); *Ridings v. Apfel*, 76 F.Supp.2[d] 707, 709 (WDVa, 1999).

## Conclusion

For these reasons, the plaintiff's motion for summary judgment should be denied, and the defendant's motion for summary judgment should be granted. This conclusion is not intended to suggest that the plaintiff does not have mental health issues and does not experience associated impairments and limitations. The limited objective record in this case simply fails to demonstrate that through the date of the ALJ's decision he was disabled from all substantial gainful activity. Review of the entire administrative record, including all of the information provided by the plaintiff,

14

makes it clear that the ALJ properly considered all of the evidence in adjudicating the plaintiff's claim, and it follows that all elements of the Commissioner's final decision are supported by substantial evidence.

## IV.    Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1.    The Commissioner's final decision is supported by substantial evidence;

2.    The Commissioner final decision gave proper consideration and weight to Dr. White's medical opinions;

3.    Substantial evidence exists in the record to support the finding that, through the date of the ALJ's decision, the plaintiff's mental health condition neither met nor equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4.    Substantial evidence exists in the record to support the finding that, through the date of the ALJ's decision, the plaintiff retained the residual functional capacity to perform past relevant work;

5.    Substantial medical and activities evidence exists in the record to support the Commissioner's findings concerning the plaintiff's symptoms and functional limitations;

6.    Substantial evidence exists in the record to support the Commissioner's finding that through the decision date the plaintiff was not disabled within the meaning of the Act;

7.    In this case the ALJ had no *sua sponte* obligation to seek clarifying information or otherwise ascertain the basis for Dr. Whites various opinions;

15

8.     Assuming *arguendo*, that the ALJ had such an obligation, the plaintiff has demonstrated no relevant prejudice;

9.     In this case the ALJ had no obligation to obtain the testimony of a medical advisor;

10.    The post-decision evidence submitted to the Appeals Council was neither new nor material;

11.    The plaintiff has met his burden of proving disability; and

12.    The final decision of the Commissioner should be reversed.


## V.     Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision fo the Commissioner, GRANTING JUDGMENT to the defendant, DENYING plaintiff's motion for summary judgment, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.


## VI.    Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the**

**undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 29th day of January 2009.

/s/   *James G. Welsh*

United States Magistrate Judge
